## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KARINA SMITH and ELIJA MOSES,**
**individually and on behalf of others**
**similarly situated,**

                    **Plaintiffs,**

**vs.**                                                    **Case No. 8:09-CV-1628-T-27MAP**

**JEFF RAINEY, et al.,**

                    **Defendants.**
_____/

### ORDER

    **BEFORE THE COURT** are four motions to dismiss raising substantive and procedural objections to the Amended Complaint (Dkts. 45, 47, 48, 52). The 73 page Amended Complaint includes 20 counts, 228 paragraphs and 61 subparagraphs, and names nine defendants. It seeks injunctive relief against all defendants and purports to assert various state and federal statutory causes of action, common law tort claims, and breach of contract claims against the defendants, some individually and some collectively. For the reasons discussed, the motions to dismiss (Dkts. 45, 47, 48, 52) are GRANTED, with leave to amend.

### Background

    This action was filed in state court on behalf of "Karina Smith" and "Elijah Moses," two dependent children in the legal custody of Defendant Department of Children and Families (""DCF"), and purportedly on behalf of a class of foster children in the custody of DCF whose parents' parental rights have been terminated and who have been physically placed with Defendant Hillsborough Kids, Inc. ("HKI") pursuant to Chapter 39, Florida Statutes and Fla. Stat. §§ 401.1671

1

and 401.1675.  (Dkt. 38 ¶ 29).  The Amended Complaint seeks to address alleged systemic deficiencies in the foster care system in Hillsborough County and to recover damages for the named Plaintiffs.

Presumably because the children lacked legal capacity to sue under Florida law,[1] when suit was filed, Plaintiffs' counsel moved the Circuit Court to appoint Nancy G. Farage as guardian ad litem for this matter. (Dkt. 1-1 at 51-52).[2]  Plaintiffs' counsel stated that Ms. Farage was the pro bono attorney appointed by the dependency court to serve as attorney ad litem for these children and was uniquely suited to serve as guardian ad litem by virtue of her familiarity with the Hillsborough County foster care system and with Plaintiffs.[3]  The state court granted the motion, albeit "without prejudice to any Defendant which desires to be heard on this issue from filing an appropriate motion and setting it for a hearing." (Dkt. 1-1 at 49-50).  No party contends that Ms. Farage is not authorized to maintain this lawsuit on behalf of Plaintiffs pursuant to Fed. R. Civ. P. 17(c)(2).

Plaintiffs sued (1) Hillsborough Kids, Inc., ("HKI"), the Florida corporation that operates the Florida foster care system in Hillsborough County pursuant to a contract with DCF, as well as its president and chief executive officer, Jeff Rainey, and its chief operating officer, Sunny Hall

---

[1]  *See Kingsley v. Kingsley*, 623 So. 2d 780, 785 (Fla. 5th DCA 1993) (holding that a minor did not have capacity to sue for termination of his parents' parental rights); *S.A.P. v. State Dept. of Health and Rehab. Servs.*, 704 So. 2d 583, 585-86 (Fla. 1st DCA 1997) ("Under Florida Rule of Civil Procedure 1.210 a minor is incapable of bringing an action on his or her own behalf, but can only sue by and through a guardian ad litem, next friend, or other duly appointed representative."); *Gonzalez ex rel. Gonzalez v. Reno*, 86 F. Supp. 2d 1167, 1184 (S.D. Fla. 2000) (minor lacked capacity to sue under Florida law),

[2]  *See Kingsley*, 623 So. 2d at 784 ("[I]f a minor mistakenly brings an action in his own name such defect can be cured by the subsequent appointment of a next friend or guardian ad litem.") (citing *Smith v. Langford*, 255 So. 2d 294, 297 (Fla. 1st DCA 1971)).

[3]  Apparently, both children are represented in their open dependency cases by a *guardian ad litem. See* Amended Compl. Dkt. 38, ¶ 44.  The Amended Complaint does not state whether the dependency guardian ad litem was informed of this lawsuit and agreed that pursuing it is in the best interests of Plaintiffs.

(together, the "HKI Defendants") (Dkt. 38 ¶¶ 16-18); (2) the Agency for Health Care Administration ("AHCA"), which is the Florida state agency that administers the state Medicaid program, as well as its Secretary, Holly Benson, *id*. ¶¶ 19, 21-22 (together, the "AHCA Defendants"); (3) First Health, a private corporation responsible for determining whether Plaintiffs were eligible for certain physical and mental health services, *id*. ¶ 20[4]; and (4) DCF, the state agency that supervises the operation of the Florida foster care system, as well as its Secretary, George Sheldon, and its regional administrator for Hillsborough County, Nicholas Cox, *id*. ¶¶ 23- 25.

On August 17, 2009, Defendants DCF, Sheldon, and Cox removed the case pursuant to 28 U.S.C. §§ 1441(b) and 1331.

### Class Allegations

The Amended Complaint (Dkt. 38) includes the following allegations:

Each class member is a party to an ongoing dependency proceeding in state court. *Id*. ¶¶ 32, 38. Some class members have no guardian ad litem acting on their behalf in their dependency proceedings, even though appointment of a guardian ad litem is mandated by an unspecified law. *Id*. ¶ 33. Very few of the class members have an attorney ad litem representing them in their dependency proceedings. *Id*. ¶ 37.

Many class members (whom Plaintiffs' counsel chooses to describe as "captives," *id*. ¶ 31) and "hostages," *id*. ¶ 41(l), 42) have been in the foster care system for more than two years. *Id*. ¶ 41(b); *see also id*. ¶ 27(b). HKI frequently changes class members' "placements" and routinely allows far more than the two placement changes prescribed or targeted by an unspecified standard, thereby injuring the class members and increasing the likelihood of their suffering from "severe reactive attachment problems." *Id*. ¶ 41 (d)-(e).

---

[4]  Apparently, First Health is actually First Health Service Corporation, Inc.  *See* Dkt. 48.

Class members are not provided with "appropriate, mandatory, proactive, best practice, targeted, child-specific adoptive recruitment efforts." *Id*. ¶¶ 41(f), *see also id.* 55. As a result, class members often remain in foster care longer than is permitted by (i) unspecified state law, *see id.* ¶ 50, and by (ii) an unspecified provision of the Adoption and Safe Families Act of 1997, *see id.* ¶ 51 (eighteen months). HKI has also breached its contractual duty to meet an annual "adoption goal," missing the goal by about 5%. *Id*. ¶ 41(i).

Many class members are being administered dangerous psychotropic medications, primarily for purposes of behavioral control. *Id*. ¶¶ 34-35, 41(l). Many class members are administered these medications without the informed consent orders required by Section 39.407, Florida Statutes, or at least without orders entered after a full hearing and a physician's evaluation based on complete medical records. *Id*. ¶ 36. Indeed, HKI and DCF routinely permit the administration of these drugs without complying with the requirements of Section 39.407. *Id*. ¶ 41(m).

As a matter of policy, HKI declines to provide mentally disabled or unstable class members with an available but unspecified "targeted [adoptive parent] recruitment service." *Id*. ¶ 41(g); *see also id.* ¶¶ 89, 91. Additionally, HKI and DCF do not attempt at all to find adoptive parents for certain class members whom they regard as "not stable" enough for adoption. *Id*. ¶ 41(j).

The HKI Defendants do not provide enough "therapeutic and other foster beds" in Hillsborough County to meet the needs of class members who need a "therapeutic placement in the community." *Id*. ¶ 90. Instead, the HKI Defendants have adopted the practice of holding such children in locked psychiatric facilities in Hillsborough and other counties. *Id*. Moreover, claiming a shortage of good "therapeutic foster homes," HKI routinely places mentally unstable class members in facilities or therapeutic group homes outside Hillsborough County. *Id*. ¶ 41(h); *see also*

*id.* ¶ 92.   As a matter of policy, HKI declines to provide these class members with otherwise available adoption services.  *Id*. ¶ 41(h); *see also id.* ¶ 93.

The Amended Complaint contains the following allegations as to the named Plaintiffs.  Both Plaintiffs have been diagnosed with unspecified "mental health disabilities and impairments" that qualify as disabilities under the ADA.  (Dkt. 38 ¶¶ 14-15).

**Allegations as to the named Plaintiffs**

Plaintiff Karina Smith was born in 1994 and has been in foster care since January, 2004.  *Id*. ¶ 60.  For several years before 2004, Smith received services while under the supervision of DCF and HKI.  *Id*. ¶ 62.  Smith was available for adoption by some time in 2005.  *Id*. ¶ 63.  Smith has not received "proactive targeted child specific [adoptive parent] recruitment" for at least two years.  *Id*. ¶ 75.

In 2005, Smith's health care providers determined that keeping her in a locked psychiatric placement and on psychotropic medications was harming her and recommended unspecified, less restrictive alternatives.  *Id*. ¶¶ 65-66.  On more than one occasion, Plaintiff's therapist recommended that she be placed in a "therapeutic foster home."  *Id*. ¶ 70.

Notwithstanding these recommendations, and contrary to unspecified federal law mandating the least restrictive placements and unspecified state and federal "EPSDT statutes," "Defendants" have arranged for Smith to be held in locked psychiatric placements throughout her time in the foster care system.  *Id*. ¶¶ 68-69.  Additionally, "Defendants" have caused or permitted to be administered to Smith dangerous psychotropic medications (including medications that cannot or should not be prescribed to minors under any circumstances) without the authorization required by Section 39.407, and in violation of the due process clause of the Fourteenth Amendment.  *See id*. ¶¶ 68, 70, 79.

5

Several months before the Amended Complaint was filed, the dependency court ordered that Smith be removed to a therapeutic foster home. *Id*. ¶ 137. However, Smith remains in a locked psychiatric hospital in Tequesta, Florida, "on unconsented to medications, deteriorating," *Id*. ¶ 42; *see also id*. ¶ 69.

Plaintiff Elijah Moses was born in 1998 and has been in foster care "essentially . . . since birth." *Id*. ¶ 61. Moses was placed with an adoptive mother, who neglected and abused him for years. *See id*. ¶¶ 61, 76-77. DCF investigators removed Moses from the adoptive home in July, 2007, and his adoptive mother's parental rights were terminated in September, 2007. *Id*. ¶ 64. Moses was then placed in a locked psychiatric facility called Tampa Bay Academy. *Id*. ¶¶ 73, 78. There, Plaintiff was abused in an unspecified manner and administered dangerous psychotropic medications. *Id*. ¶ 78. Many of these medications were administered without the authorization required by Section 39.407, and in violation of the due process clause of the Fourteenth Amendment. *See id*. ¶¶ 43, 79. Like Smith, Moses has been held in placements more restrictive than necessary and has been administered psychotropic medications solely for purposes of behavioral control. *Id*. ¶¶ 72, 74.

After Moses spent twelve months at Tampa Bay Academy, HKI transferred Moses (with the assistance of AHCA and First Health) to a group home in Brevard County. *Id*. ¶ 84. There, Moses has been "Baker Acted"[5] owing to concern that he had become suicidal. *Id*. ¶ 86.

HKI has refused to provide Plaintiff Moses with "proactive [adoptive parent] recruitment services," at first because of his reported mental disabilities and thereafter because he was placed

---

[5] "Florida Statute § 394.467, known as the Baker Act, allows a person to be placed involuntarily in a treatment facility if clear and convincing evidence indicates that the person is mentally ill, and, inter alia, there is a substantial likelihood that, based on recent behavior, the person will inflict serious bodily harm on himself or another person." *Turner v. Crosby*, 339 F.3d 1247, 1256 n.7 (11th Cir. 2003).

outside Hillsborough County. *Id*. ¶ 85. HKI and DCF representatives have informed his attorney ad litem in writing that they will not provide Moses with "child specific [adoptive parent] recruitment services" because he is placed outside the county. *See id*. ¶ 43. Moses has not received "proactive targeted child specific [adoptive parent] recruitment" for at least two years. *Id*. ¶ 75.

### The claims, defendants, and relief sought

In Count I, Plaintiffs seek injunctive relief against all Defendants, in the form of an order requiring the immediate transfer of the individual plaintiffs to different foster homes, prohibiting further administration of "mind altering psychotropic medications" to Plaintiffs and class member, prohibiting Health and AHCA from further approval of payment for "excessive unlawfully administered psychotropic medications," compelling the other Defendants to "change their policies, procedures, customs and practices . . . so that even youngsters with mental health issues and who are out of county, are provided proactive child specific adoption recruitment services . . ." (Dkt. 3, p. 29).

In Count II, Plaintiffs, asserting third party beneficiary status, seek declaratory relief and to compel the performance of contractual obligations against HKI and DCF. In Counts III and IV, Plaintiffs assert third party beneficiary breach of contract claims against DCF and HKI. Additionally, the Plaintiffs bring individual claims against the HKI Defendants for "negligent social work and case management" (Counts V-VI); negligence claims (*Yamuni* claims[6]) against DCF for "negligent investigation and failure to protect" based on DCF's alleged failure to prevent physical and sexual abuse of Smith by her parents, failure to remove Smith from her current placement at a locked psychiatric hospital, and failure to prevent abuse and neglect of Moses by his adoptive parent

---

[6] *See Dept. of Health & Rehab. Servs. v. Yamuni,* 529 So. 2d 258 (Fla.1988).

(Counts VII-VIII); claims against DCF, HKI, First Health, and AHCA for violations of statutory duties prescribed by unspecified provisions of Chapter 39, Florida Statutes and Fla. Stat. § 409.145, "the state and federal EPSDT Act, among others" (Counts IX-X); additional individual negligence claims ("negligent operation of foster care system") against DCF and HKI (XI-XII); individual claims against HKI for intentional infliction of emotional distress (Counts XIII-XIV); and individual claims under the Americans with Disabilities Act against the HKI Defendants (Counts XV, XVIII), the DCF Defendants (Counts XVI, XIX), and AHCA, Benson, and First Health (Counts XVII, XX).

### Standard

Rule 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A conclusory statement of the elements of a cause of action will not suffice to state a claim. *Id.* While the Court must accept all factual allegations as true in evaluating a motion to dismiss under Rule 12(b)(6), the tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which, when taken as true, "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**Discussion**

**Re: Defendants Agency for Health Care Administration and Holly Benson's Motion to Dismiss**

**Amended Complaint (Dkt 45):**

The Amended Complaint includes five counts against AHCA ((Counts I, IX, X, XVII, XX)

and three counts against Benson (Counts I, XVII, XX).  First, Defendants' contention that Plaintiffs

have not complied with the pre-suit notice requirement of Fla. Stat. § 768.28 is rejected.[7]

Notice to the agency and written denial of the claim are "conditions precedent to maintaining

an action" against a state agency or subdivision. Fla. Stat. § 768.28(6)(b).  Florida courts strictly

construe this notice requirement and a plaintiff must allege in the complaint that he complied with

the notice provisions of Section 768.28(6).  *See Levine v. Dade County Sch. Bd.*, 442 So. 2d 210,

212-13 (Fla. 1983).  Although the Amended Complaint does not expressly cite § 768.28(6)(a), it

alleges that "[a]ll conditions precedent have been satisfied, complied with or waived, *including but

not limited to applicable notice provisions*." (Dkt. 38 ¶ 12) (emphasis added).  This allegation is

sufficient to satisfy the pleading requirements of both Florida Rule of Civil Procedure 1.120(c) and

Fed. R. Civ. P. 8(a).  *See Wagatha v. City of Satellite Beach*, 865 So. 2d 620, 622 (Fla. 5th DCA

2004) ("A plaintiff must plead compliance with the statute, although a general averment will

suffice."); *Motor v. Citrus County Sch. Bd.*, 856 So. 2d 1054, 1055 (Fla. 5th DCA 2003) (Torpy, J.,

---

[7] Section 768.28 provides:

An action may not be instituted on a claim against the state or one of its agencies or subdivisions
unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any
claim against a municipality or the Florida Space Authority, presents such claim in writing to the
Department of Financial Services, within 3 years after such claim accrues and the Department of
Financial Services or the appropriate agency denies the claim in writing.

Fla. Stat. § 768.28(6)(a).

concurring specially) ("Under Rule 1.120(c), a plaintiff may allege compliance by making a general averment . . . ."); *Bailey v. Fla. Dep't of Corrs.*, 958 So. 2d 986, 987 (Fla. 4th DCA 2007) (noting that under Florida Rule of Civil Procedure 1.120(c), it is sufficient to generally allege the performance or occurrence of conditions precedent to suit, and stating that "[t]his rule applies to the presuit notice conditions of section 768.28.") (citing *Commercial Carrier*, 371 So. 2d 1010, 1022-23 (Fla. 1979)).

As for Defendants' argument that Plaintiffs' claims are barred by the applicable statute of limitations, suffice it to say that it does not affirmatively appear from the face of the Amended Complaint that the applicable statute of limitations has run. Defendants' argument to the contrary is rejected. The statute of limitations is more appropriately raised as an affirmative defense in this instance.[8]

As for Defendants' argument that Plaintiffs do not sufficiently allege that they are "qualified individuals" under the ADA, that contention is likewise rejected. Plaintiffs' allegations in paragraphs 14 and 15 adequately allege that they are disabled within the meaning of the ADA. However, Defendants correctly argue that Counts XVII and XX do not allege the manner in which they discriminated against Plaintiffs under the ADA.

Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12131-12165, addresses discrimination by state and local governmental entities in the operation of public services, programs, and activities. Title II provides that "no qualified individual with a

---

[8] This is not to suggest that Plaintiffs may avoid the inevitable by omitting material dates supporting their claims, as Plaintiffs seemingly suggest. ("The Amended Complaint makes no reference to a date of accrual for any of the various causes of action.") (Dkt. 57, p. 10). It would serve no purpose to plead a cause of action destined to be dismissed because the limitation period has run. In amending, Plaintiffs should take care to allege material dates bringing their claim(s) within the applicable limitation period.

disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes a "department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Title II prohibits governments from, among other things, denying a benefit to a qualified individual with a disability because of his disability, providing him with a lesser benefit than is given to others, or limiting his enjoyment of the rights and benefits provided to the public at large. *See* 28 C.F.R. § 35.130(b)(1)(i), (iii), and (vii).[9] In addition, while there is no absolute duty to accommodate individuals with a disability, a public entity must make reasonable modifications to its policies, practices, or procedures if necessary to avoid the exclusion of individuals with disabilities, unless the accommodation would impose an undue financial or administrative burden on the government, or would fundamentally alter the nature of the service. *See* 28 C.F.R. §§ 35.130(b)(7), 35.150(a)(2) and (3).

---

[9] Congress instructed the Attorney General to issue regulations to implement Title II, based on regulations previously promulgated under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (2000 & Supp. I 2001). *See* 42 U.S.C. § 12134. "Because Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, *see* 42 U.S.C. § 12134(a), the regulations 'must [be given] legislative and hence controlling weight unless they are arbitrary, capricious, or plainly contrary to the statute.'" *Parker*, 225 F.3d at 5 n.5 (quoting *United States v. Morton*, 467 U.S. 822, 834 (1984)).

To establish a prima facie case under the ADA, the plaintiff must show:

(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007). "A plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations." *Rylee v. Chapman*, 316 F. App'x. 901, 906 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008)).

"In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an accommodation." *Id*. (quoting *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)); *see also Wood v. Pres. and Trs. of Spring Hill Coll.*, 978 F.2d 1214, 1222 (11th Cir. 1992) (holding that student was required to demonstrate that she made specific request for accommodation to prevail on ADA claim against college).[10]

Plaintiffs do not allege how Defendants' actions or inactions in approving payments for medical providers under Medicaid constituted violations of the ADA. The conclusory allegations in ¶¶ 202-204 of Count XVII and ¶¶ 222- 226 of Count XX do not state a claim under the ADA. Nothing in the Amended Complaint supports Plaintiffs' theory that approving Medicaid payments for medications involves discriminatory conduct under the ADA, notwithstanding the unsupported

---

[10] *But cf. Robertson v. Las Animas County Sheriff's Dept.*, 550 F.3d 1185, 1197 (10th Cir. 2007) (where need for accommodation is obvious, specific request may not be required)' *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 n.7 (1st Cir. 2001) (although the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request, "sometimes the [person]'s need for an accommodation will be obvious; and in such cases, different rules may apply.");

allegations of knowledge.   It is undisputed that these Defendants are "responsible for the administration of the Florida and federal Medicaid system," "authorized to make payments for medical assistance to foster children." (Dkt. 38, ¶¶ 19, 22; Dkt. 50, p. 2). Counts XVII and XX accordingly do not state a cause of action under the ADA and are accordingly subject to dismissal.

As to Counts I, IX and X, Defendants correctly contend that the Amended Complaint does not allege wrongdoing on the part of these Defendants.  At most, Plaintiffs allege knowledge of wrongdoing on the part of third parties over which these Defendants have no authority or control. This is not actionable under Florida law. *Michael & Philip, Inc. v. Sierra*, 776 So. 2d 294, 297 (4th DCA 2001).  Plaintiffs' strained theory of liability is not supported by factual allegations in the Amended Complaint or any citation of legal authority.   Simply put, Plaintiffs' contention that AHCA's approval of payment for psychotropic medications constitutes a violation of unspecified provisions of Chapter 39 and Section 409.15 of the Florida statutes is nothing more than an unsupported conclusion. Plaintiffs point to no statute obligating these Defendants to "prevent the misconduct of others in so far as they have the duty to administer Medicaid funds only for appropriate treatment." (Dkt. 50, p. 11).  Counts I, IX and X accordingly do not state causes of action against these Defendants and are subject to dismissal.

Additionally, Defendants correctly point out that Counts IX and X fail to allege which statutes AHCA allegedly violated, or any statutory duty owed by these Defendants. Plaintiffs' conclusory allegations in ¶¶ 148, 150, 154, and 156 do not identify what statutory provisions Defendants allegedly violated.  These generalized allegations do not provide notice to Defendants of what statutory duties they are alleged to have violated, at least to the extent Defendants would be able to frame a responsive pleading under Rule 12(b)(6).

13

Even if Plaintiff can allege a duty of care owed by these Defendants, they would arguably enjoy sovereign immunity under Article X, Section 13 of the Florida Constitution for the state law claims Plaintiffs are attempting to assert in Counts I, IX, and X.  Under Florida law, "[t]here can be no governmental liability unless a common law or statutory duty of care existed that would have been applicable to an individual under similar circumstances." *Henderson v. Bowden*, 737 So. 2d 532, 534-35 (Fla. 1999) (citing Art. X, § 13, Fla. Const.; § 768.28 Fla. Stat. (1995)).[11]

Basic judgmental or discretionary governmental functions are immune from suit, as opposed to operational acts, which are not protected. *Pollock v. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 1933);*Wallace v. Dean*, 3 So. 2d 1035, 1053-54 (Fla. 2009).  ACHA's approval of payment under Medicaid constitutes a discretionary or judgmental function for which it, and Benson, are immune from liability.  The four part test adopted in Florida for assessing "discretionary - versus - operational" function is satisfied here. *Id.*  ACHA's responsibility involves a basic governmental program, its approval of payment for medical services is essential to that program, the decision to approve payments requires the exercise of "basic policy evaluation, judgment, and expertise by ACHA, and ACHA possess the statutory authority and duty to approve payments. *Id.*

**Re: Defendants Jeff Rainey, Sunny Hall, and Hillsborough Kids, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 47):**

These Defendants are sued in Counts I, II, III, IV, V, VI, IX, XIII, XIV, XV, and XVIII. Their contention that Plaintiffs have not complied with the notice requirements of Fla. Stat. § 768,26 is likewise rejected. *See* Amended Complaint, ¶ 12.  That contention appears to be Defendants' only

---

[11] "Arguably" because the Amended Complaint does not definitively set forth a duty flowing from ACHA to Plaintiffs.

argument in support of dismissal with respect to Counts V and VI.  Those counts are therefore not subject to dismissal as to these Defendants.

HKI is alleged to be the "contractual operator of the Florida foster care system in Hillsborough County," "in charge of the overall case management and care of the Plaintiffs." (Dkt. 38, ¶¶ 16, 80).  Plaintiffs allege that HKI's involvement with the care, placement, and determining whether children in its care are provided certain targeted recruitment services. (Dkt. 38, ¶¶ 41(c-m)), including the decision "not to provide children with mental disabilities and instabilities with available targeted recruitment service." (Dkt. 38, ¶¶ 41(g), 85, 89, 91, 93).  Plaintiffs allege that the failure to provide this service violates the ADA. (Dkt. 38, ¶ 56).  Plaintiffs further allege that HKI has failed "to provide enough therapeutic and other foster beds in Hillsborough County to meet the needs of children in the foster care system who need therapeutic placement . . ." (Dkt. 38, ¶ 90) and that HKI follows a practice of not providing targeted adoption recruitment services to children . . . who have been put in out of county placements." (Dkt. 38, ¶ 93).  Plaintiffs allege that these actions violate the ADA and the EPSDT (federal Early Periodic Screening Diagnosis and Treatment Act). (Dkt. 38, ¶ 94).

Count I states a cause of action against HKI for injunctive relief.  Defendants' arguments to the contrary are rejected. For the same reasons, Defendants' argument that Counts IX and X do not state causes of action is rejected, notwithstanding Plaintiffs' failure to specify the particular statutory provisions Defendants are alleged to have violated.[12]   Clearly, HKI has statutory duties under Chapter 39 and Section 409.145 of the Florida Statutes, as well as under the federal EPSDT Act.

---

[12] In amending, Plaintiffs shall identify the specific statutory provisions they allege Defendants violated.

Plaintiffs acknowledge Defendants Rainey and Hall are sued in their official capacity pursuant to Fla. Stat. § 768.26, and not in their individual capacity. (Dkt. 53, p. 20).  Further, Rainey and Hall may be sued in their official capacity under the ADA. It is settled that Title II of the ADA does not permit individual capacity suits.  *See Rylee v. Chapman*, 316 F. App'x. 901, 905 (11th Cir. 2009); *Badillo v. Thorpe*, 158 F. App'x. 208, 211 (11th Cir. 2005) ("[T]here is no individual capacity liability under Title II of the ADA . . . .").   However, Title II suits against state officials for prospective injunctive relief under the *Ex Parte Young* doctrine to prohibit a continuing violation of the ADA are permitted.[13]  *See Miller v. Young*, 384 F. d 1248, 1263 n.16 (11th Cir. 2004) (plaintiff entitled to sue state official in his official capacity for injunctive relief under the ADA), *vacated on other grounds,* 449 F.3d 1149.

Defendants correctly argue that Counts II, III and IV are subject to dismissal.  Count II seeks a declaration that Plaintiffs are third-party beneficiaries of the contract between DCF and HKI and an order compelling specific performance of that contract.  Counts III and IV assert claims for breach of the DCF-HKI contract.  Defendants contend that Counts II-IV fail to state a claim because Plaintiffs do not and cannot sufficiently allege facts showing that they are third-party beneficiaries of the DCF-HKI contract.  The Court agrees.

An intended third-party beneficiary is one who is recognized by the parties to an agreement to have a right of performance in order to effectuate the intent of the parties. Restatement (Second) of Contracts § 302(b); *Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810, 811 (Fla. 3d DCA 1985).  Florida recognizes a non-party's right to sue on a contract only

---

[13]  *See Ex parte Young*, 209 U.S. 123 (1908).  The *Ex Parte Young* doctrine permits federal courts to entertain suits against state officers seeking prospective equitable relief to end continuing violations of federal law.  *McClendon v. Georgia Dept. of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001).

where that party was an intended beneficiary of the contract, and non-parties who receive merely an incidental or consequential benefit from a contract have no right to its enforcement. *See Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031-32 (Fla. 4th DCA 1994).

A non-party is an intended third-party beneficiary "only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Id.* at 1031. Florida law looks to the "nature or terms of a contract to find the parties' clear or manifest intent that it 'be for the benefit of a third party.'" *Jenne v. Church & Tower, Inc.*, 814 So. 2d 522, 524 (Fla. 4th DCA 2002) (quoting *Am. Sur. Co. of New York v. Smith*, 100 Fla. 1012, 130 So. 440, 441 (1930)). "The language used in a contract is the best evidence of the intent and meaning of the parties." *Jenne*, 814 So. 2d at 524 (quoting *Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp.*, 364 So.2d 15, 17 (Fla. 4th DCA 1978)); *see also Hollywood Lakes Country Club v. Cmty. Ass'n Servs., Inc.*, 770 So. 2d 716, 719 (Fla. 4th DCA 2000); *Horizon Images, Inc. v. Delta Color Graphics, Inc.*, 639 So. 2d 186, 187 (Fla. 4th DCA 1994).

The contract between DCF and HKI expressly states: "[t]his contract shall not be construed as providing any enforceable right to any third-party." (Dkt. 52-1 at 1).[14]   In light of this unambiguous expression of the parties' intent, Counts II-IV are subject to dismissal. *See Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 359 (Fla. 3d DCA 2006).

---

[14]   Under the "incorporation by reference" doctrine, a document attached to a motion to dismiss may be considered part of the pleadings if its contents are alleged in the complaint and the document is (1) central to the plaintiff's claim and (2) undisputed. *See Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Although only an portion of the contract is attached to the DCF Defendants' motion, Plaintiffs do not dispute its authenticity.

The Court agrees with Defendants that Counts XIII and XIV (outrage counts) do not allege the requisite outrageous conduct to support a cause of action under Florida law for intentional infliction of emotional distress. The elements of the tort of intentional infliction of emotional distress are: (1) intentional or reckless conduct, which the actor knew or should have known would likely result in emotional distress, (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotion[al] distress; and (4) the emotional distress was severe. *Gallogly v. Rodriguez*, 970 So. 2d 470, 471 (Fla. 2d DCA 2007). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

While it may be that Plaintiffs can, by amending, plead a cause of action for outrage under Florida law if they confine themselves to allegations which meet the threshold for outrageousness, Counts XIII and XIV do not meet that threshold. Rather, Plaintiffs' allegations of various actions and inactions, including claims of negligence and inaction, mitigate against a determination that Defendants' conduct was sufficiently outrageous to support such a cause of action. Counts XIII and XIV are therefore subject to dismissal.

Finally, as to Count XV, Plaintiffs' claim under the ADA, the Court agrees with Plaintiffs that they have sufficiently alleged that they are disabled as that term is defined in the ADA, that is, they are "qualified individuals" under the ADA. (Dkt. 38, ¶¶ 14, 15; 185). Further, Plaintiffs allege that Defendants have excluded them from participating in the targeted proactive recruitment services due to their disabilities. *See* Amended Complaint, ¶¶ 41(g)(h); 187. Defendants' motion to dismiss Count XV is due to be denied.

18

**Re: Defendant First Health Service Corporation Inc.'s Motion to Dismiss (Dkt. 48):**

Plaintiffs allege three claims against Defendant First Health Service Corporation (Counts I, IX and X). Plaintiffs allege that First Health is a private corporation "responsible to and acting on behalf of AHCA for serving as a gatekeeper responsible for declaring foster children . . . for certain physical and mental health care." (Dkt. 38, ¶ 20). First Health is alleged to have "had control over mental health services being provided to the minor Plaintiffs," and "agreed to and has approved payment by AHCA for the strikingly large amount of behavior control psychiatric medications and restrictive placements to which the minor Plaintiffs have been subjected." (Dkt. 38, ¶ 82). Like their allegations against AHCA, Plaintiffs theorize, without factual or legal support, that approval of Medicaid payments by First Health correlates to responsibility for the administration of psychotropic medications to foster children, their placement, and exclusion of those children with disabilities from targeted recruitment services. (*See* Dkt. 38, ¶¶ 87, 88, 89).

Plaintiffs do not allege specific statutory wrongdoing on the part of these Defendants, or any duty flowing to Plaintiffs from these Defendants, or a breach of any such duty. Plaintiffs do not allege that First Health administered medications, determined placement of foster children, or determined whether disabled foster children would be excluded from services otherwise available to foster children. Plaintiffs' reliance on *Dept. of Health and Rehab. Servs. v. Yamuni,* 529 So. 2d 258, 262 (Fla. 1988), for the proposition that First Health is charged with a statutory duty "to ensure the welfare of the State's children" is misplaced. *Yamuni* does not support such a broad proposition, particularly with respect to First Health and ACHA, its principal.

Under Florida law, First Health has no legal responsibility over the acts or inactions of third parties over which it has no authority or control. *Michael & Philip, Inc. v. Sierra, supra*. The Court

19

agrees with First Health that the Amended Complaint does not allege any duty owed by First Health such that it would be liable in tort if it were a private individual, as a result of its approval of payments on behalf of AHCA.  Further, even it such a duty arose, as an instrumentality of AHCA, First Health would arguably enjoy sovereign immunity, notwithstanding the waiver present in Fla. Stat. § 768.28, for the reasons discussed with respect to ACHA. *See Wallace v. Dean*, *supra.*

As to Counts IX and X, the Court agrees with First Health that these two counts do not sufficiently allege any statutory violations on the part of First Health, either under Chapter 39 of the Florida Statutes or under the federal EPSDT.  For the same reasons Counts IX and X are subject to dismissal with respect to AHCA, they are likewise subject to dismissal as to First Health. Similarly, Counts XVII and XVIII,[15] purporting to allege violations of the ADA, do not state a cause of action against First Health. Although Plaintiffs do allege that they are "qualified individuals" as defined by the ADA, Counts XVII and XX do not allege the manner in which First health discriminated against Plaintiffs under the ADA.

**Re: Defendants Florida Department of Children and Families, George Sheldon, and Nicholas Cox's Motion to Dismiss (Dkt. 52):**

In support of their motion, the DCF Defendants raise sovereign immunity, non-compliance with the statutory, pre-suit notice requirements, the statute of limitations, and general inadequacy of Plaintiffs' various causes of action.  With respect to the DCF Defendants' arguments concerning pre-suit notice and the statute of limitations, those arguments are rejected for the same reasons discussed above. Likewise, for the reasons discussed above, the Court agrees with the DCF Defendants'

---

[15] Understandably, First Health's motion erroneously refers to Counts XV and XVI, rather than XVI and XVIII (Dkt. 48, p. 10).

argument that Counts II and III do not allege a plausible cause of action based on third party beneficiary status.

Defendants argue that Count I should be dismissed because the judiciary has no jurisdiction to "monitor and evaluate" the executive decisions of DCF. (Dkt. 52, p. 12). Based on the broad relief Plaintiffs seek in Count I, the Court agrees with Defendants. Defendants cite *Dept. of Children and Family Servs. v. I.C.*, 742 So.2d 401, 404 (Fla. 4th DCA 1999), which held:

> However, the court has no general jurisdiction over DCF to monitor and evaluate its functioning. The court cannot "micro manage" a facility operated by DCF. (Citation omitted). Nor can the court order DCF to provide specific treatment or placement of a child. (Citation omitted). All of these are executive agency decisions which implicate policy development and prioritizing of funding. These matters are not assigned to the judiciary to resolve.

As the Court noted in *I.C.*, although the judiciary has no jurisdiction over the executive decision making of DCF, "the juvenile court can act to protect children within its jurisdiction." 742 So. 2d at 405. Obviously, the federal district court does not possess the jurisdiction over dependent children that the Florida Circuit Courts possess.

Plaintiffs cite no authority in support of the broad injunctive relief they seek in Count I, or for the exercise of jurisdiction by the federal court over DCF and its decision making. To the extent, therefore, Plaintiffs seek an order to "immediately transfer . . . Katrina to an appropriate therapeutic foster home in Hillsborough County," and to " immediately transfer . . . Elijah to a safe, proper, Tampa area foster home," the Court agrees with Defendants that it has no jurisdiction to enter such an order. *Dept. of Children and Family Servs. v. I.C.*, *supra*. Likewise, absent some federal constitutional violation or prohibition, the Court lacks jurisdiction to enter orders directing Defendants to provide specific treatment. *Id.*

Notwithstanding, to the extent Plaintiffs seek prospective injunctive relief from continuing violations of the ADA in Count I (although it is not clear that they do), dismissal would not be warranted. *McClendon v. Georgia Dept. of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (*Ex Parte Young* doctrine permits federal courts to entertain suits against state officers seeking prospective equitable relief to end continuing violations of federal law). Count I as plead, however, seeks relief beyond the jurisdiction of the district court and is due to be dismissed without prejudice.

### Sovereign immunity

The DCF Defendants argue that Plaintiffs' negligence claims in Counts VII-VIII and XI-XII are barred because they do not fall within the limited waiver of Florida's sovereign immunity in §768.28, Florida Statutes. Although the State of Florida and its municipalities are generally immune from tort liability, Florida has waived its sovereign immunity "under circumstances in which the state or agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws" of Florida. Fla. Stat. § 768.28(1). Even if a complaint contains adequate allegations establishing tort liability for a private person, under section 768.28, "discretionary policy-making or planning activities of governmental entities remain immune from tort liability." *Lee v. Dept. of Health and Rehab. Servs.*, 698 So. 2d 1194, 1198 (Fla. 1997) (function of assigning employees to supervise and care for the mentally disabled is a discretionary, policy-making decision for which HRS is immune); *see also Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). By contrast, "immunity from tort liability is waived for negligent activities that are operational and for which a common law duty of care exists." *Id*. (citations omitted).

In Florida, a four part test is utilized to determine whether sovereign immunity applies. "Functionally, the discretionary-versus-operational-function test is intended 'to determine where, in

22

the area of governmental processes, orthodox tort liability stops and the act of governing begins.'"
*Wallace v. Dean*, 3 So.3d at 1053 (quoting *Commercial Carrier*, 371 So. 2d at 1018).

Applying the earlier version of that test, the Florida Supreme Court has concluded that agency liability exists for the negligence of a caseworker who failed to investigate complaints of child abuse. *See Dept. of Health & Rehab. Servs. v. Yamuni*, 529 So. 2d at 260 ("[t]he actions of caseworkers investigating and responding to reports of child abuse simply cannot be elevated to the level of policy-making or planning."); *Dept. of Health & Rehab. Servs. v. Whaley*, 574 So. 2d 100 (Fla. 1991)(placement of a child in a specific room in an HRS detention facility known to be occupied by dangerous juveniles was an operational function not protected by sovereign immunity).

On the other hand, placement decisions and the providing of rehabilitative services constitute discretionary governmental functions for which the State is immune under the doctrine of sovereign immunity. *See Dept. of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 911-13 (Fla. 1995)("[W]e believe the placement function constituted a 'discretionary planning or judgmental function' entitled to immunity . . ." "We also believe the same immunity accorded to placement decisions applies to the discretionary decisions made by HRS in allocating services to dependents and delinquents under the statutory scheme mandated by the legislature.").

The Court distinguished the operational, case worker decisions exposing children to specific dangers at issue in *Whaley* and *Yamuni* from decisions involving the exercise of "the broad discretionary authority vested by the legislature in HRS to determine an appropriate course of remedial treatment for the children that come within its custody." *Dept. of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d at 913. ("HRS's decisions as to the allocation of services involve an exercise of broad discretionary executive power vested in the agency by the legislature that is immune from tort liability.").

23

To the extent, therefore, Plaintiffs contend that the DCF Defendants were negligent in the placement of the individual Plaintiffs, or in providing services, including medical treatment, counseling, and therapy, the DCF Defendants are immune from liability in Counts I, VII, VIII, XI, and XII pursuant to sovereign immunity.  On the other hand, to the extent that Counts VII and VIII allege  negligent investigation of reported abuse, sovereign immunity would not apply. *Dept. of Health & Rehab. Servs. v. Yamuni*, *supra*.  Because these counts include claims for which DCF is immune as well as claims for which it is not, Counts VII and VIII are due to be dismissed with leave to amend.[16]

Defendants argue that Counts IX and X (statutory violations) should be dismissed because Plaintiffs fail to specify which statutory provisions they contend Defendants violated, citing *Twombly* for the proposition that "more than labels and conclusions" are required. (Dkt. 52, p. 20).  The Court agrees.

In Counts IX and X, Plaintiffs refer generally to "Chapter 39 and section 409.145, Florida Statutes and the state and federal EPSDT Act, among others . . ." (Dkt. 38, ¶¶ 147, 150, 153). Plaintiffs do not, however, specify in the Amended Complaint which statutory duties Defendants allegedly breached.  Moreover, Plaintiff's vague reference to an unspecified duty "to properly conduct the foster care program, and to protect foster children such as Plaintiff . . ." and to "see that the Medicaid system operated properly . . ." arguably intrudes upon discretionary decision making for which Defendants are immune under sovereign immunity.  A complaint is deficient if it fails to give fair notice of the basis for the claims alleged. *See Twombly*, 550 U.S. at 555.  Counts IX and X are therefore due to be dismissed.

---

[16] In amending, it is incumbent upon Plaintiffs to carefully conform their allegations to the reasoning of these authorities, or risk dismissal.

Defendants correctly observe that Counts XIII and XIV (outrage counts) do not name the DCF Defendants in the heading. Plaintiffs do not clarify or address this observation in their response. Regardless, Counts XIII and XIV are due to be dismissed for the reasons discussed above. If Plaintiffs amend these counts, they shall identify the party against whom the counts are brought, and the specific conduct in which that defendant engaged which Plaintiffs contend was outrageous.

The DCF Defendants argue for dismissal of Counts XVI and XIX (ADA violations) as to Sheldon and Cox on the ground that the ADA does not provide for liability against individuals. It is settled that Title II of the ADA does not permit individual capacity suits. *See Rylee v. Chapman*, 316 F. App'x. at 905; *Badillo v. Thorpe*, 158 F. App'x. at 211. Accordingly, to the extent the Amended Complaint can be read as attempting to state a claim against Sheldon and Cox in their individual capacities, Counts XVI and XIX are subject to dismissal.[17]

However, because the real party in interest in an official capacity suit is the government entity, so that a suit against a state official in his official capacity is in effect against a "public entity," courts have permitted Title III suits against state officials for prospective injunctive relief under the *Ex Parte Young* doctrine to prohibit a continuing violation of the ADA. *See Miller v. Young*, 384 F. 3d 1248, 1263 n.16 (11th Cir. 2004); *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003), *cert. denied*, 541 U.S. 936 (2004). Accordingly, to the extent that Plaintiffs seek prospective injunctive relief from continuing violations of the ADA in Counts XVI and XIX, dismissal of these counts as to Sheldon and Cox in their official capacities is not warranted.

---

[17] Plaintiffs seemingly acknowledge that Sheldon and Cox cannot be held individually liable under the ADA and correctly maintain that they can be liable in their official capacity for injunctive relief. (Dkt. 57, p. 20)

Finally, the DCF Defendants argue that Counts XVI and XIX fail to state a reasonable accommodation claim because Plaintiffs do not allege that they made any specific demand for any accommodation. *See Gaston*, 167 F.3d at 1363; *Wood*, 978 F.2d at 1222.  However, the Complaint alleges that, as a matter of policy, the DCF Defendants declined to provide Plaintiffs available adoptive parent recruitment services which were provided to non-disabled children.  Accordingly, the Amended Complaint adequately alleges that Defendants denied Plaintiffs the benefits of these services by reason of their disability.

Although Defendants do not mention the Eleventh Amendment in their brief and do not argue that state sovereign immunity, apart from the Eleventh Amendment,[18] bars Plaintiff's ADA claims, Defendants in passing cite *Garrett*, 531 U.S. at 374 n.9, for the general proposition that Counts XVI and XIX, to the extent they seek money damages, are barred.  *Garrett* held that the Eleventh Amendment bars private suits seeking money damages for state violations of Title I of the ADA but expressly left open the question whether the Eleventh Amendment permits suits for money damages under Title II.  531 U.S. at 360 n.1; *see also Tennessee v. Lane*, 541 U.S. 509, 514 (2004).  As Counts XVI and XIX are Title II claims, *Garrett* does not support Defendants' contention.

Beyond this passing citation to *Garret*, neither party has addressed the extent to which Plaintiffs' claims may be barred by Eleventh Amendment principles.  Accordingly, the Court will not address the issue,[19] except to note that, by removing this case to federal court, DCF has waived

---

[18]  *See generally Alden v. Maine*, 527 U.S. 706, 713 (1999) ("[T]he sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.").

[19]  *See Wisconsin Dept. of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998) (federal courts are not required to raise Eleventh Amendment issues *sua sponte*.); *McClendon*, 261 F.3d at 1257 ("[U]nlike other jurisdictional bars, federal courts are required to consider whether the Eleventh Amendment strips them of jurisdiction only if the state defendant insists that it does."); *cf. Seaborn v. Dep't of Corrs.*, 143 F.3d 1405, 1407 (11th Cir. 1998) (holding that an assertion of Eleventh Amendment immunity challenges a court's jurisdiction and must be resolved before the merits of the claim may be addressed.).

its Eleventh Amendment immunity from suit in federal court,[20] although not necessarily its immunity

from liability.[21]

### Sua Sponte Dismissal

With the exception of Counts I and II, each count improperly incorporates selective preceding

paragraphs, resulting in a confusing and unnecessarily complicated pleading, contrary to the mandate

of Rule 8, Fed. R. Civ. P. (Pleading must contain a "short and plain statement of the claim showing

that the pleader is entitled to relief.").  Moreover, the Amended Complaint includes 21 paragraphs

purporting to support a broad class certification.[22]

In response to the Amended Complaint, Defendants filed four lengthy motions to dismiss,

including 66 pages of argument.  Plaintiffs' responses include 71 pages of argument. Without regard

to the ultimate merits of Plaintiffs' claims, and regardless of the extended discussion addressing the

arguments raised in the four motions to dismiss, the Amended Complaint is subject to *sua sponte*

dismissal, with leave to amend, in order that he issues may be framed and the merits of the dispute

addressed in a meaningful way. *See Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,*

---

[20] *See Lapides v. Board of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002) (the State's action of voluntarily agreeing to remove case to federal court constituted a voluntary invocation of the federal court's jurisdiction and a waiver of its Eleventh Amendment immunity from suit as to "state law claims, in respect to which the State had waived immunity in its own courts."); *Embury v. King*, 361 F.3d 562, 564 (9th Cir. 2004) (concluding that "the rule in *Lapides* applies to federal claims as well as to state claims."); *Estes v. Wyo. DOT*, 302 F.3d 1200, 1206 (10th Cir. 2002) (Wyoming Department of Transportation waived immunity relative to ADA Title I claim by removing to federal court); 16 Moore's Federal Practice § 107.31 ("A majority of circuit courts addressing waiver by removal issues in light of [*Lapides*] have concluded that a state's removal of a case waives the state's Eleventh Amendment immunity as to federal claims as well as state-law claims.")

[21] *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 252-54 (5th Cir. 2006) (distinguishing Eleventh Amendment immunity from suit in federal court from state sovereign immunity from liability).  Defendants may have also waived any contention that the Court should abstain from hearing this case under the principles set forth in [*Younger*] because the broad injunctive relief sought by plaintiffs would interfere with ongoing juvenile court proceedings.  *See Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 285 (N.D. Ga. 2003).

[22] Plaintiffs have filed a Motion for Certification of Class (Dkt. 65), to which Defendants have filed oppositions (Dkts. 67, 68, 69).

162 F.3d 1290, 1333 (11th Cir. 1998)("[d]istrict courts have the power and the duty to define the issues at the earliest stages of litigation.").

Rule 8(a)(2), Fed.R.Civ.P., mandates "a short and plain statement of the claims showing that the pleader is entitled to relief."   Not only does the Amended Complaint contravene Rule 8, by incorporating selective prior paragraphs in Counts III through XX, the Amended Complaint is essentially what the Eleventh Circuit calls a "shotgun pleading." *See BMC Industries, Inc. v. Barth Industries, Inc.,* 160 F.3d 1322, 1327 n.6 (11th Cir. 1998), *cert. denied,* 526 U.S. 1132 (1999) (citing *Cramer v. Florida,* 117 F.3d 1258, 1263 (11th Cir. 1997)); *Mason v. Allen* (*In re Allen*),150 B.R. 21, 22 (Bankr. E.D.Va.1993); *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d at 1333 ("These types of cases invariably begin with a long list of general allegations, most of which are immaterial to most of the claims for relief.   The general allegations are incorporated by reference into each count of the complaint; the complaint is followed by an answer that responds to each and every statement.   If the trial judge does not quickly demand repleader, all is lost-extended and largely aimless discovery will commence, and the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits.")[23]

In sum, the Amended Complaint requires the reader to engage in a time consuming, exhaustive attempt to comprehend the various theories of liability and relief sought, distinguish

---

[23] In fairness, it does appear that counsel was careful not to incorporate paragraphs from preceding counts. Rather, Counts III through XX selectively incorporate paragraphs from the 95 preliminary paragraphs. Notwithstanding, this style of pleading essentially results in the same time consuming task of sifting through each claim and sorting out the irrelevant allegations as typical shotgun pleadings require. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-96 (11th Cir. 2002) ("The second and third amended complaints are quintessential "shotgun" pleadings. The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous.").

between the several defendants, the theories of liability alleged against each, and the relief sought against each.  As evidenced by the four motions challenging the sufficiency of the allegations, the task of sifting through this lengthy pleading is nothing short of onerous.

As noted, the Amended Complaint has prompted lengthy motions to dismiss, resulting in a delayed, prolonged litigation focusing on the sufficiency of the pleadings, rather than on the merits. Unless curtailed, it effectively sets the stage "for the immense and unnecessary expenditure of resources" which has been repeatedly criticized in this Circuit.  *See Byrne v. Nezhat,* 261 F.3d 1075, 1129-31 (11th Cir. 2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice.  The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard."); *see also Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1279 (11th Cir. 2006) ("Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently.").

Further, pleadings of this nature place an undue burden on the Court's docket.  *See Byrne,* 261 F.3d at 1130 ("[S]hotgun pleadings wreak havoc on the judicial system.").  It is likely to drive up the cost of this litigation, broaden discovery unnecessarily, cause avoidable discovery disputes, and impede the Court's ability to resolve the dispute efficiently.  *See Davis v. Coca-Cola Bottling Co. Consol.,*  516 F.3d 955, 981-83 (11th Cir. 2008) ("[T]he mischief shotgun pleadings cause undermines the public's respect for the courts-the ability of the courts to process efficiently, economically, and fairly the business placed before them.").

The need for judicial intervention is therefore apparent.  In sum, this case is not manageable in its current posture.  Whatever the merits of the underlying claim(s), Plaintiffs risk having them overshadowed by the manner in which these claims are alleged, including the number of claims and unsupported theories of liability and damages.

Upon consideration, it is **ORDERED** that the Amended Complaint is **DISMISSED** without prejudice. Plaintiffs are granted leave to file a second amended complaint consistent with the directives and authorities cited herein, within thirty (30) days. Each count shall include a "short and plain statement of the claim showing that the pleaded is entitled to relief," identify the plaintiff(s) bringing the claim and the defendant(s) sued, and shall be independently plead, without selective incorporation of preceding paragraphs. Discrete claims should be plead in separate counts in accordance with Rule 10(b). *Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001).

**DONE AND ORDERED** in chambers this 30th day of September, 2010.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record